**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**(Related to / Tag-Along with existing Case No. 1:25-cv-13806)**

WORCESTER DIVISION No.

W. MARK RUSSO,
GGP-PROVIDENCE PLACE LLC,
Plaintiff,

v.
INSTYLE FRAGRANCES LLC
HITESH (HARRY) HARJANI, et al.,
Defendants / Removing Parties.
Hitesh (Harry) Harjani, individually
Instyle Fragrances-Perfumes d/b/a
Instyle Runway, pro se assignee of claims,
and Nicholas Fiorillo, Pro Se Assignee
and real party in interest,
Removing Parties / Movants et al

FILED
IN CLERKS OFFICE
2026 SEP -8 P 4:03
U.S. DISTRICT COURT
DISTRICT OF MASS.

REMOVING PARTIES' EMERGENCY OMNIBUS MOTION TO REFUSE MAGISTRATE JUDGE JURISDICTION, FORMAL OBJECTION TO MAGISTRATE ASSIGNMENT, DEMAND FOR IMMEDIATE STRUCTURAL AND PROTECTIVE STAY OF ANY PRETEXTUAL SNAP REMAND PENDING APPEALS, AND SPECIFIC REQUEST FOR AN ARTICLE III / EN BANC PANEL EVIDENTIARY HEARING ON THE MERITS TO PREVENT WEAPONIZED "SNAP REMAND" OF THIS CIVIL-RIGHTS REMOVALPURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 73, 28 U.S.C. § 636(c), 28 U.S.C. §§ 1443, 1446(d), 1447(d), AND IN VINDICATION OF PRESIDENT TRUMP'S EXECUTIVE ORDERS ENDING THE WEAPONIZATION OF THE COURTS AGAINST AMERICAN CITIZENS AND NATIONAL WHISTLEBLOWERS

NOW COME Removing Parties Hitesh (Harry) Harjani, individually and on behalf of Instyle Fragrances LLC d/b/a Instyle Runway, and Assignees and real party in interest (collectively, "Removing Parties" or "Movants") et al, appearing pro se with an absolute, uncompromised reservation of all rights and jurisdictional tracks, and respectfully move this Honorable Court to:

**(1) decline and reject any assignment, reference, or exercise of jurisdiction by a United States Magistrate Judge over this removed action;**
**(2) keep this matter exclusively before a Senate-confirmed Article III District Judge;**
**(3) enter an immediate protective and structural stay of any remand, physical or electronic case-file transfer, or state-court eviction/possessory activity; and**
**(4) prevent a weaponized "snap remand" that would extinguish the unique statutory right of appellate review Congress conferred on civil-rights removals under 28 U.S.C. § 1443.**

This motion is brought on the same jurisdictional and factual nucleus as the Notice of Federal Removal of Rhode Island Sixth Division District Court Case Nos. 6CA-2026-10388 and 6CA-2026-10389, filed as a tag-along / related action to the already-pending Case No. 1:25-cv-13806 (in which Harjani is lead Plaintiff).

## .I. INTRODUCTION AND PROCEDURAL POSTURE

1. Removing Parties have filed a Notice of Federal Removal of the 7-day commercial summary-process / eviction actions pending in the Rhode Island Sixth Division District Court, Providence County, Nos. 6CA-2026-10388 and 6CA-2026-10389, pursuant to 28 U.S.C. §§ 1441, 1443, and 1446.
2. Removal is expressly grounded in federal-question jurisdiction under 28 U.S.C. § 1331 and, crucially, civil-rights removal jurisdiction under 28 U.S.C. § 1443(1), because Harjani—an interracial immigrant business owner and national whistleblower, together with assignee Fiorillo—cannot enforce in the Rhode Island courts rights secured by the Fourteenth Amendment and 42 U.S.C. § 1983 through the very judicial process that is the instrument of the deprivation.
3. This removal rests on the identical jurisdictional and factual bases into the parallel (a:) Rhode Island Superior Court receivership (PC-2024-05826), ; and (b) the First Amended Verified Civil Rights RICO Complaint already pending in this Court as Case No. 1:25-cv-13806, in which Harjani is lead Plaintiff against GGP-Providence Place LLC, GGP-Natick West L.L.C., Receiver Russo, Attorney Michael D. Crane, Justice Brian Stern, and co-conspirators.
4. By operation of 28 U.S.C. § 1446(d), an absolute, self-executing statutory stay attached to the entire controversy the moment notice was given. The Rhode Island courts "shall

proceed no further unless and until the case is remanded." Russo's authority to collect rent, terminate leases, lock out tenants, or prosecute these tag-along evictions exists solely by virtue of the removed receivership appointment and is therefore frozen.

5. Subsequent August 2026 events independently compel federal protection: Attorney Crane's written stipulation of August 18, 2026 ("I will continue the hearing to Wednesday, September 9, 2026"), followed by an attempted last-minute double-cross; deep-fake / mystery-USPS "imposter postman" storefront service that bypassed the official Providence Place Mall mailroom; total withholding of the actual motions and exhibits; after-hours Saturday "special delivery" used to intimidate retail employees; secret-court two-track hearings (WebEx "block and mute," burn-bagged / scrubbed emergency filings); pre-scripted and forged-order tactics; and the July 4th weekend extrajudicial padlock / lockout attempt. These are additional acts of weaponized lawfare, mail fraud, and civil-rights deprivation.
6. To safeguard the unique statutory right to federal appellate review that Congress expressly granted for civil-rights removals under § 1443—and that § 1447(d) preserves—this Court must issue a protective stay of any remand process before a physical or electronic transfer of the case file can strip this Court of jurisdiction and force the Removing Parties back into the same Rhode Island forums that have already muted them, scrubbed their filings, served them by mystery courier, and attempted holiday lockouts.

## II. ABSOLUTE REJECTION AND DECLINATION OF MAGISTRATE JUDGE JURISDICTION

7. Pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c), a self-represented litigant maintains an absolute, inviolable right to refuse magistrate-judge jurisdiction and to demand the protective oversight of a life-tenured Article III District Judge.
8. The Removing Parties hereby formally notify the Clerk, the Court, and all adverse parties that they DO NOT CONSENT to have a United States Magistrate Judge conduct any proceedings in this case, including any hearings, reports and recommendations, scheduling orders, stays, remands, or injunctive relief.

9. Given the trans-jurisdictional character of the public-corruption and racketeering pattern already pled in 1:25-cv-13806 and restated in the Notice of Removal—Permanent Receiver Russo, Attorney Crane, Presiding Justice Stern, pre-scripted sidebar rulings, docket scrubbing, USPO-adjacent process fraud, and retaliatory eviction of a minority-owned tenant holding priority and administrative claims exceeding $122 million—it is structurally imperative that this matter remain exclusively before a Senate-confirmed Article III District Judge with full constitutional authority to issue structural stays, hold bad actors in federal contempt, and relate this tag-along eviction into the existing Worcester Division action in which Harjani already stands as Plaintiff.

10. Assignment to a magistrate for a "snap" report recommending remand would convert a § 1443 civil-rights removal into an administrative disposal track and would itself constitute the very weaponization of process the Executive Orders and the removal statutes forbid.

## III. LEGAL STANDARD GOVERNING THE STAY AND THE PREVENTION OF "SNAP REMANDS"

11. The decision to grant a protective structural stay pending appeal is governed by the classic four-factor test set forth in Nken v. Holder, 556 U.S. 418, 434 (2009):

- **a strong showing of likelihood of success on the merits;**
- **irreparable injury absent a stay;**
- **lack of substantial injury to other parties; and**
- **promotion of the public interest.**

12. Because Congress explicitly exempted civil-rights removals under 28 U.S.C. § 1443 from the general rule of unreviewable remands under 28 U.S.C. § 1447(d), the standard for a stay is structurally modified to prevent "snap remands." A snap remand occurs when a single federal judge reflexively signs a remand order and the Clerk immediately transmits the certified physical or electronic case file to the state court, instantly divesting federal jurisdiction and cutting off the litigant's statutory right to interlocutory review in the First Circuit before that review can be perfected.

13. To prevent this truncation of due process, this Court must issue an immediate administrative and structural stay of any contemplated remand, prohibit the Clerk from executing any transfer of the file to the Rhode Island Sixth Division District Court or the Rhode Island Superior Court, and keep the controversy here—related to and consolidated with 1:25-cv-13806—until an Article III judge (and, if remand is still contemplated, the First Circuit) can review the § 1443 record on the merits.
14. Likelihood of success is not speculative. The core receivership was already the subject of a Notice of Removal accepted and docketed July 27, 2026. Section 1446(d) is self-executing. Russo's eviction power is derivative of that removed appointment. Service of the eviction papers and of the later motions was defective as a matter of Rhode Island Rule 4 and was compounded by the mystery-USPS storefront drop and Crane's own written continuance. Post-removal state-court process is void. The same defendants, the same mall assets, the same lockout pattern, and the same RICO / § 1983 theory are already before this Court in the tag alone case 1:25-cv-13806.

## IV. FRESH EVIDENCE OF IRREPARABLE HARM AND CONTINUOUS CIVIL-RIGHTS DEPRIVATIONS

15. The July 4th weekend lockout and padlock attempt. Irreparable harm is not hypothetical. Over the July 4th weekend the Receiver and his agents attempted an unlawful 24-hour extrajudicial eviction, including efforts to chain and padlock Instyle's operation at Unit 4300—the 350 sq. ft. trash-room / broom-closet space into which the tenant had already been bait-and-switched after being driven from a 3,700 sq. ft. inline storefront. Centennial personnel stated on the record: "The order came down directly from Russo to clear you out because of Instyle threaten lawsuit, its about your lawsuit, these people are ruthless." That lockout was executed while the receivership was already subject to federal removal and while Harjani was prosecuting the mirror-image claims as Plaintiff in 1:25-cv-13806.
16. Secret hearings, block-and-mute, and docket scrubbing. During the May 22 and June 26, 2026 remote proceedings, Presiding Justice Stern deployed an electronic "block and mute" framework on WebEx that silenced minority-owned pro se tenants holding over $122,000,000 in priority and administrative claims. Clerks systematically burn-bagged and scrubbed more than 24 emergency motions from the public electronic tracking system.

These are secret hearings on a two-track docket: one public and sanitized, one off-record and pre-scripted. Pre-scripted bench rulings read from extrajudicial sidebar scripts function as forged orders manufactured outside the adversarial process.

17. USPO mail fraud, mystery-postman service, and employee / witness intimidation. For fifteen years Instyle's storefront has never received legal or postal mail; all legitimate deliveries go through the official mall mailroom three stories below the promenade. At 1:22 p.m. on a Saturday, an individual in a uniform closely resembling a USPS carrier bypassed that mailroom, entered the retail floor, shouted "We have a Special Delivery for Instyle-Harjani!," and handed a retail employee a bare hearing notice while withholding every motion, memorandum, and exhibit. On the August 17, 2026 conference call Attorney Crane admitted knowledge of the delivery:

**"The postman delivered you the papers from the court" and "He delivered the mail from the court for US, OK !"**

An off-duty postal worker (or person posing as one) "doing a favor" for the Receiver or clerk's office has no Rhode Island sheriff or constable authority. Papers held at the clerk's office for weeks, then dispatched after hours, **POSTMARKED WEEKS EARLIER** less than 48 hours before a hearing, constitute mail fraud, impersonation, and intimidation of employees and witnesses under color of federal postal authority and LEO-adjacent process.

18. Attorney Crane's written continuance and attempted double-cross. On August 18, 2026, at 8:39 a.m., Crane wrote:

**"I will continue the hearing to Wednesday, September 9, 2026. Please provide the address to mail any paperwork. I will make sure that goes out in the mail this week."**

Removing Parties relied on that officer-of-the-court stipulation, stood down hearing preparation, and gave formal notice of non-appearance on August 19. An attempted last-minute repudiation of that written accord is a classic trial-by-ambush and a further due-process deprivation. Any default or possessory order entered in the face of that stipulation and of defective service is void ab initio.

19. If a snap remand is permitted, Russo and Crane will immediately resume summary process, lockouts, padlocking, inventory seizure, and title-clearance in aid of the pre-arranged under-market

$133 million sale of a public-private infrastructure asset on state-owned land—the precise "Providence Place Plunder Dome" scheme already before this Court in 1:25-cv-13806—before any Article III or First Circuit review can occur. The tenant's going-concern, inventory, and $122 million in claimed priority/administrative equities will be destroyed.

## V. THE PUBLIC INTEREST DEMANDS AN ARTICLE III RECORD AND, IF NECESSARY, FIRST CIRCUIT REVIEW—NOT A MAGISTRATE SNAP REMAND

20. The public interest is served by keeping a civil-rights / RICO tag-along inside the federal court that already has the live, related action (1:25-cv-13806) in which Harjani is Plaintiff. Splitting the eviction off to a magistrate for rapid remand would produce inconsistent judgments, reward defective service and written-stipulation repudiation, and return whistleblowers to the same state apparatus that muted them, scrubbed their docket, and attempted holiday lockouts.
21. President Trump's Executive Orders ending weaponized lawfare against American citizens, immigrant entrepreneurs, and whistleblowers target exactly this pattern: coordinated use of receiverships, summary process, secret hearings, defective or impersonated service, and pre-scripted orders to silence tenants who have exposed bid-rigging and insider capture of public-private assets.
22. Only an Article III District Judge—and, if remand is still considered, preserved access to the First Circuit under the § 1443 / § 1447(d) exception—can properly examine the July 27, 2026 receivership-removal docket entry, Crane's August 18 email, the mystery-postman incident, the WebEx mute record, the scrubbed emergency motions, and the identity of parties and claims with 1:25-cv-13806.

## VI. PRAYER FOR RELIEF

WHEREFORE, Removing Parties Hitesh (Harry) Harjani and Nicholas Fiorillo respectfully request that this Honorable Court:

1. DECLINE AND REJECT any assignment, reference, or jurisdiction of a United States Magistrate Judge over this action, and order that all matters be heard exclusively by a life-tenured Article III District Judge;
2. ENTER an Immediate Protective and Structural Stay of all remand proceedings, and PROHIBIT the Clerk of this Court from executing any physical or electronic transfer of the case file to the Rhode Island Sixth Division District Court or any other Rhode Island tribunal;

3. RELATE AND CONSOLIDATE this removed eviction action with existing Case No. 1:25-cv-13806 (Harjani et al. v. GGP-Natick West L.L.C. et al.), in which Harjani is already Plaintiff;
4. STAY all underlying Rhode Island summary-process, eviction, lockout, padlock, chaining, inventory, and possessory activity in Case Nos. 6CA-2026-10388 and 6CA-2026-10389, and restrain Receiver W. Mark Russo, Attorney Michael D. Crane, and their agents from any further property-clearance steps unless and until this Court enters an order of remand after full Article III consideration;
5. DECLARE that post-removal state-court process, any order founded on the mystery-postman / incomplete service, and any order entered in violation of Crane's August 18, 2026 written continuance stipulation are void;
6. If the Court nevertheless contemplates remand, STAY its own order pending interlocutory review in the United States Court of Appeals for the First Circuit pursuant to 28 U.S.C. § 1447(d) as applied to a § 1443 removal, and set the matter for an evidentiary hearing on the merits before an Article III judge (or, as appropriate, request or facilitate en banc / panel review); and
7. GRANT such other and further relief as this Court deems necessary to effectuate President Trump's Executive Orders ending weaponized lawfare and to protect the Removing Parties' constitutional and statutory rights, including Harjani's rights as Plaintiff in the related federal action.

Respectfully submitted,
/s/ Hitesh (Harry) Harjani
Hitesh (Harry) Harjani, Pro Se
Individually and on behalf of
Instyle Fragrances LLC
5 Scotch Cap Road, Quaker Hill, CT 06375
harryharjani@yahoo.com
Phone: 860-913-6032

/s/ Nicholas Fiorillo
Nicholas Fiorillo, Pro Se Assignee
real party in interest
gotspace1222@gmail.com

C ERTIFICATION OF SERVICE AND VERIFICATION

I, Hitesh Harjani, attest that the statements contained herein are true to the best of my knowledge and recollection. I further certify that this motion has been served upon adverse parties and filed with this Court in accordance with the Federal Rules of Civil Procedure.

/s/ Hitesh Harjani